UNITED STATES DISTRICT COURT
for the SOUTHERN DISTRICT OF INDIANA,
INDIANAPOLIS DIVISION

| | |
|---|---|
| LAURALEE SHANNON HIATT, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     vs. | ) CAUSE NO. 1:11-cv-1282-DKL-RLY |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

**ENTRY**

Plaintiff Lauralee Hiatt applied for disability benefits under the Social Security Act in July 2008, alleging that she became disabled in January 2006 due to several physical and mental conditions. The Commissioner[1] denied her application and Ms. Hiatt brought this action for judicial review.

Judicial review of the Commissioner's factual findings is deferential: courts must affirm if her findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Substantial evidence is more than a scintilla, but less than a preponderance, of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001). If

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013, while this Cause was pending. See http://www.socialsecurity.gov/pressoffice/factsheets/colvin.htm. Pursuant to Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for the former Commissioner, Michael J. Astrue.

the evidence is sufficient for a reasonable person to conclude that it adequately supports the Commissioner's decision, then it is substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004). This limited scope of judicial review derives from the principle that Congress has designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ [administrative law judge], we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). *Carradine*, 360 F.3d at 758. While review of the Commissioner's factual findings is deferential, review of her legal conclusions is *de novo*. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months". 42 U.S.C. §§ 416(i)(1) and 423(d)(1)(A). A person will be determined to be disabled only if his impairments "are of such severity that he is not only unable to do her previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The combined effect of

all of an applicant's impairments shall be considered throughout the disability determination process.  42 USC § 423(d)(2)(B).

The Social Security Administration ("SSA") has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability.  20 C.F.R. § 404.1520.  If disability status can be determined at any step in the sequence, an application will not be reviewed further.  *Id.*  At the first step, if the applicant is currently engaged in substantial gainful activity, then she is not disabled.  At the second step, if the applicant's impairments are not severe, then she is not disabled.  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  Third, if the applicant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, then the applicant is deemed disabled.  The Listing of Impairments are medical conditions defined by criteria that the SSA has pre-determined are disabling.  20 C.F.R. § 404.1525.  If the applicant's impairments do not satisfy a Listing, then her residual functional capacity ("RFC") will be determined for the purposes of the next two steps.  RFC is an applicant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations and is categorized as sedentary, light, medium, or heavy.  20 C.F.R. § 404.1545.  At the fourth step, if the applicant has the RFC to perform his past relevant work, then she is not disabled.  Fifth, considering the applicant's age, work

experience, and education (which are not considered at step four), and her RFC, she will not be determined to be disabled if she can perform any other work that exists in significant numbers in the national economy.

The burden rests on the applicant to prove satisfaction of steps one through four. The burden then shifts to the Commissioner at step five to establish that there are jobs that the applicant can perform in the national economy. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). If an applicant has only exertional limitations that allow her to perform the full range of work at her assigned RFC level, then the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids"), may be used at step five to arrive at a disability determination. The grids are tables that correlate an applicant's age, work experience, education, and RFC with predetermined findings of disabled or not-disabled. 20 C.F.R. §§ 404.1569 and 1569a. If an applicant has non-exertional limitations or exertional limitations that limit the full range of employment opportunities at her assigned RFC level, then the grids may not be used to determine disability at that level; a vocational expert must testify regarding the numbers of jobs existing in the economy for a person with the applicant's particular vocational and medical characteristics. *Id.*; *Lee v. Sullivan*, 988 F.2d 789, 793 (7th Cir. 1993). The grids result, however, may still be used as an advisory guideline in such cases. 20 C.F.R. § 404.1569.

An application for benefits, together with any evidence submitted by the applicant and obtained by the agency, undergoes initial review by a state-agency disability examiner

4

and a physician or other medical specialist. If the application is denied, the applicant may request reconsideration review, which is conducted by different disability and medical experts. If denied again, the applicant may request a hearing before an administrative law judge ("ALJ").[2] An applicant who is dissatisfied with the decision of the ALJ may request the SSA's Appeals Council to review the decision. If the Appeals Council either affirms or declines to review the decision, then the applicant may file an action in district court for judicial review. 42 U.S.C. § 405(g). If the Appeals Council declines to review a decision, then the decision of the ALJ becomes the final decision of the Commissioner for judicial review.

Ms. Hiatt filed her application in July 2008. It was denied on initial and reconsideration reviews in October 2008 and April 2009, respectively. A hearing before an ALJ, *via* video teleconference, was held in June 2010 and the ALJ issued her decision denying Ms. Hiatt's application in July 2010. In July 2011, the Appeals Council denied Ms. Hiatt's request for a review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner on Ms. Hiatt's claim for benefits.

At step one, the ALJ found that Ms. Hiatt had not engaged in substantial gainful

---

[2] Initial and reconsideration reviews in Indiana are performed by an agency of state government (the Disability Determination Bureau, a division of the Indiana Family and Social Services Administration) under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q (§ 404.1601, *et seq.*). Hearings before ALJs and subsequent proceedings are conducted by personnel of the federal SSA.

activity since July 3, 2008, the date that she applied for benefits.[3]

At step two, the ALJ determined that Ms. Hiatt had the following severe impairments: **(1)** generalized anxiety disorder; **(2)** major depression; **(3)** borderline personality disorder; **(4)** mild osteoarthritis in lumbar spine; **(5)** bulging disc in lumbar spine, post laminectomy with screw migration, but no nerve compression; **(6)** cervical spine degenerative disc disease, with minimal disc protrusion; **(7)** osteoarthritis in right hip; and **(8)** asthma. The ALJ found that the following impairments or conditions that Ms. Hiatt had were not severe: endometriosis, chronic laryngitis, chronic sinusitis, episodes of acute bronchitis. The ALJ noted that Ms. Hiatt had been diagnosed with chronic obstructive pulmonary disease, but it is unclear whether the ALJ found that this impairment did not exist or was not severe. The ALJ noted that Ms. Hiatt has a history of substance use/misuse, but she found that there was not a substance-abuse disorder and that Ms. Hiatt's use/misuse had no more than a minimal effect on her ability to perform work-related functions. Finally, the ALJ found that Ms. Hiatt's alleged sleep apnea and osteoarthritis in the knees were not impairments.

At step three, the ALJ found that Ms. Hiatt did not have an impairment or combination of impairments that met or medically equaled any of the Listing of Impairments. She stated that she assessed Ms. Hiatt's impairments against Listings 1.02

---

[3] It is not apparent why the ALJ determined Ms. Hiatt's disability as of her application date and not her alleged onset-of-disability date, January 1, 2006, or any date in between. But Ms. Hiatt did not raise an issue regarding this point.

(major dysfunction of joint(s)), 1.04 (disorders of the spine), 7.00 (hematological disorders (unspecified)), 3.03 (asthma), 12.04 (affective disorders), 12.06 (anxiety-related disorders), and 12.08 (personality disorders).

For steps four and five, the ALJ determined Ms. Hiatt's residual functional capacity. She found that Ms. Hiatt had the capacity for sedentary work with some exertional restrictions. Considering Ms. Hiatt's pain and mental impairments, The ALJ limited her to simple, routine tasks and occasional interaction with co-workers and the general public.

At step four, the ALJ found that Ms. Hiatt had no past relevant work. At step five, considering Ms. Hiatt's RFC, age (34 years), and limited education (work experience/transferability of skills was inapplicable), and the testimony of a vocational expert at the hearing, the ALJ found that there were jobs existing in significant numbers the national economy that Ms. Hiatt could perform. Therefore, the ALJ determined that Ms. Hiatt was not disabled.

Ms. Hiatt asserts two challenges to the ALJ's decision.

### Listing 1.04C

Ms. Hiatt argues that her impairments meet the criteria of Listing 1.04C. The criteria for that Listing are:

> 1.04  *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal

> arachnoiditis, spinal stenosis,[4] osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise[5] of a nerve root (including the cauda equina) or the spinal cord. With:
>
> \* \* \*
>
> C.  Lumbar spinal stenosis resulting in pseudoclaudication,[6] established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular[7] pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

Ms. Hiatt points to evidence in the record showing diagnoses of lumbar spinal stenosis, (*e.g.*, R. 309 (spinal canal stenosis at L3-4, L4-5, and L5-S1), 424 (lumbar stenosis), 428 (same), 561 (same), 562 (severe foraminal stenosis at L4-5)), compromise of a nerve root, (*e.g.*, R. 309 (impingement of the dural sac at L3-4, L4-5, and L5-S1; partial obliteration of the L4 nerve root sheath at L3-4), 298 (root lesion at L4, L5)), and pseudoclaudication (*e.g.*,

---

[4] "A narrowing of the spinal canal (the long channel within the bony structure of the spine), usually as a result of hypertrophic (pertaining to abnormal enlargement) degenerative changes of the bony structure." J. E. Schmidt, *Attorneys' Dictionary of Medicine and Word Finder* at S-243 (Rel. 46, Oct. 2012) ("*Attys' Dict. Med.*").

[5] "To debilitate; to suppress the normal function of; to render inoperational; to put a burden on; to weaken." *Attys' Dict. Med.* at C-390.

[6] "A disorder marked by symptoms similar to those of intermittent claudication (which see) but actually resulting from compression of the cauda equina (which see) by a herniated intervertebral disk (or some other disorder in the region)." *Attys' Dict. Med.* at P-494.1. Claudication is "[a] condition marked by cramplike pains in the legs, especially in the calf muscles, brought on by walking and relieved by rest. It is due to a deficiency in the blood supply to the extremities, on the basis of arteriosclerosis (hardening of the arteries) or abnormal spasm of the blood vessels." *Id.* at I-140. The cauda equina is "[a] bundle of nerve fibers originating from the lower part of the spinal cord . . . and extending for some distance within the spinal canal, then emerging one by one through the openings between adjacent vertebrae to form the spinal nerves." *Id.* at C-116.

[7] Radicular means "[p]ertaining to, or involving, a root, especially the root of a spinal nerve . . . ." *Attys' Dict. Med.* at R-9.

R. 424 (spinal claudication), 425 (same), 428 (lumbar stenosis with claudication), 561 (lumbar radiculopathy with claudication)). Ms. Hiatt's testimony and the medical records are replete with allegations, reports, and/or findings of nonradicular and radicular pain in Ms. Hiatt's lower back, hips, pelvis, legs, groin, joints, neck, and shoulders, with resulting numbness in her fingers. (R. 39, 309, 328, 424, 425, 431, 432, 435, 437, 449, 450, 461, 561). The pain is described as dull, achy, and throbbing; chronic, persistent, and constant; and unbearable and excruciating. (*Id.*) There is also evidence that could support a resulting inability to ambulate effectively. (*e.g.*, R. 433 (Ms. Hiatt reports that the pain is so intense she can't walk or move, she feels like she needs a walker, and she is still falling down because her hips give out), 435 (medical-record note that Ms. Hiatt is ambulating with an unidentified assistive device)).

The Commissioner argues that Ms. Hiatt has failed to show that Listing 1.04C has been met. The only criterion that the Commissioner challenges is the inability to ambulate effectively and she argues that the only evidence which Ms. Hiatt cites is her self-serving comment at R. 433, which records her statement that she feels that she needs a walker. (As noted above, there is at least one more medical-record note that Ms. Hiatt was ambulating with an assistive device.) The Commissioner argues that there is no evidence that a walker was prescribed and cites observations in the record that Ms. Hiatt had no significant difficulty walking. (*Defendant's Brief* at 7).

The problem with the Commissioner's present reasons why Listing 1.04C is not

9

satisfied is that they are *the Commissioner's* reasons asserted for this litigation, not the ALJ's expressed reasons for his decision at the time. The ALJ's step-three finding on Listings satisfaction consists of the following:

> I have assessed the claimant's mild osteoarthritis in lumbar spine, bulging disc in lumbar spine status post laminectomy with screw migration, cervical spine degenerative disc disease with minimal disc protrusion and osteoarthritis in right hip under § 1.02 and § 1.04 Musculoskeletal System, § 7.00 Hematological disorders for the claimant's endometriosis and listing § 3.03 Asthma, Appendix 1. I have also assessed the claimant's depression with anxiety disorder under the criteria of listings § 12.04, Affective Disorders, § 12.06 Anxiety-Related Disorders and § 12.08 Personality disorders, Appendix 1. However, the medical evidence falls short of the criteria of the section, and no medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination.

(R. 13). There follows a discussion of only the severity criteria for the mental-impairments Listings. The ALJ failed to articulate any analysis of the evidence relating to the non-mental Listings criteria; instead, he gave only boilerplate, conclusory statements. Ms. Hiatt specifically asserted in her pre-hearing brief and at the hearing that she satisfied the criteria for Listing 1.04. (R. 32, 54, 200). While she did not present a developed argument specifically focused on the criteria of Listing 1.04C, there was sufficient evidence in the record for the ALJ to have inquired further and, certainly, to have evaluated the criteria of Listing 1.04C and minimally articulated her evaluation and conclusions. The ALJ did not state that Ms. Hiatt had not attempted to show or argue satisfaction of Listing 1.04C; instead, the ALJ stated that she assessed Ms. Hiatt's impairments under the Listings and found them wanting.

It is by now well-established that the Commissioner cannot fill such gaps by ALJs on judicial review. *S.E.C. vs. Chenery Corp.*, 318 U.S. 80, 87-88 (1943); *Roddy v. Astrue*, 705 F.3d 631, 637 (7th Cir. 2013). It was the ALJ's duty to minimally articulate the grounds of his findings at step three. As it is, the Court has no decision to review on the issue of Ms. Hiatt's satisfaction of Listing 1.04C and the Court declines the Commissioner's invitation to evaluate and weigh the evidence in the first instance. Perhaps substantial evidence would support a decision that Ms. Hiatt's lumbar spinal stenosis does not result in her inability to ambulate effectively, but that decision is for the ALJ, not the Court, to make and explain.

The ALJ's decision at step three regarding satisfaction of Listing 1.04C is not supported by substantial evidence. The ALJ also committed legal error by not sufficiently articulating her evaluation of the evidence against the criteria of Listing 1.04C and by not explaining an accurate and logical relationship between the evidence and her ultimate findings.

### Dr. Chua's opinion

Dr. Chua was Ms. Hiatt's treating physician for three years and he wrote two opinions declaring that Ms. Hiatt was permanently unable to work because of degenerative disc disease in her lumbar spine, osteoarthritis in her hips and knees, and secondary conditions of anxiety, depression, hypertension, and chronic obstructive pulmonary disease. (R. 419 (Verification of Disability/Development Disability form for Housing

Authority of the City of Terre Haute, October 17, 2008), 737 (Statement of Medical Condition for the Food Stamp and Temporary Assistance for Needy Families Programs, April 9, 2010)).  Ms. Hiatt argues that the ALJ failed to give Dr. Chua's opinion the weight that it was due as her treating physician.

The ALJ did not give Dr. Chua's opinion controlling weight because she noted that the ultimate question of disability is reserved to the Commissioner.  However, she accorded some credit to his opinion that Ms. Hiatt is able to sit, stand, and walk for only short periods of time but cannot push, pull, or bend and she accommodated his opinion by limiting Ms. Hiatt's RFC to sedentary work, which is less than the light level of work that the state-agency reviewers assigned.  However, the ALJ wrote that she rejected Dr. Chua's opinion that Ms. Hiatt was completely disabled from any work based on her activities of daily living:  "However, I find that the claimant's ability to cook, go grocery shopping and care for her children suggests the claimant has the capacity to perform within the assessed residual functional capacity [sedentary level] . . . ."  (R. 18).

The Court of Appeals for the Seventh Circuit has repeatedly cautioned about using a claimant's daily activities as an indication — or suggestion — of the claimant's ability to perform work on a sustained basis:

> Once again, although it is appropriate for an ALJ to consider a claimant's daily activities when evaluating their credibility, SSR 96–7p, at *3, this must be done with care.  We have repeatedly cautioned that a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time.

12

> See, *e.g.*, *Bjornson*, 671 F.3d at 647; *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir.2011); *Gentle v. Barnhart*, 430 F.3d 865, 867–68 (7th Cir.2005); *Hawkins*, 326 F.3d at 918.

*Roddy*, 705 F.3d at 639. There is one brief paragraph in the ALJ's decision addressing Ms. Hiatt's activities:

> In activities of daily living, the claimant has mild restriction. I concur with the state medical consultant who determined the claimant has mild limitation in this area, Exhibit 13F. The claimant is independent with her personal care, she makes simple meals and does light housekeeping, Exhibit 4E.

(R. 13). Exhibit 13F to which the ALJ referred and on which she relied is a Psychiatric Review Technique check-a-box form completed by state-agency psychologist B. Randal Horton. (R. 405). The only content regarding activities of daily living is where Dr. Horton checked the box for "mild" to rate the degree of Ms. Hiatt's restriction in activities of daily living, (R. 415), and at the end where he noted "Please see adjudicator r/c for additional adls", (R. 417). This is an insufficient foundation for the ALJ's decision to not credit Dr. Chua's opinion. There is no function-by-function analysis by the ALJ, or cited by her, of Ms. Hiatt's activities of daily living and how those activities relate to Ms. Hiatt's ability to perform the functions of work on a sustained basis. Because the ALJ's expressed basis for discounting Dr. Chua's treating opinion that Ms. Hiatt was incapable of sustained work was this insufficient analysis of her activities of daily living, her decision is not supported by substantial evidence.

## Conclusion

The ALJ's step-three finding that Ms. Hiatt's impairments or combination of

impairments do not meet or medically equal the criteria of Listing 1.04C is not supported by substantial evidence and is inadequately articulated. In addition, the ALJ's discounting of Dr. Chua's treating opinion that Ms. Hiatt is disabled is not supported by substantial evidence. Ms. Hiatt's claim for benefits will be remanded to the Commissioner for re-evaluation of Listing 1.04C satisfaction and Dr. Chau's opinion that Ms. Hiatt is disabled.

**DONE this date:** 03/29/2013

*[signature]*
Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution to all ECF-registered counsel of record *via* e-mail.